IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**CATHY F. ROBERTS**                                                                 **PLAINTIFF**

**v.**                                                   **CIVIL ACTION NO. 2:17-cv-129-KS-MTP**

**COMMISSIONER OF SOCIAL SECURITY**                                   **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Cathy F. Roberts brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration denying her claim for disability insurance benefits. Having considered the parties' submissions, the record, and the applicable law, the undersigned recommends that Defendant's Motion to Affirm [17] be GRANTED, the Commissioner's final decision be AFFIRMED, and this action be DISMISSED.

## PROCEDURAL HISTORY

On July 25, 2013, Plaintiff applied for disability insurance benefits, alleging disability due to fibromyalgia and chronic back pain. (Administrative Record [11] at 215-18; 235). After the agency denied Plaintiff's claim, an Administrative Law Judge ("ALJ") held a hearing, and on May 2, 2016, the ALJ issued a decision finding that Plaintiff was not disabled. ([11] at 20-30; 35-53). Plaintiff appealed the ALJ's decision to the Appeals Council. On May 26, 2017, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. ([11] at 5-8). Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

**ADMINISTRATIVE LAW JUDGE'S DECISION**

In her May 2, 2016, decision, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(b)-(f)[1] and determined that Plaintiff was not disabled. At step one, the ALJ noted that Plaintiff had worked after her alleged disability onset date—June 28, 2013. The ALJ, however, determined that Plaintiff's work activity since the alleged onset date did not rise to the level of substantial gainful activity. ([11] at 22).

At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, carpal tunnel syndrome, and "left shoulder." The ALJ found that Plaintiff's hyperlipidemia, hypertension, and obesity were not severe. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. ([11] at 22-24).

---

[1] This analysis requires the ALJ to make the following determinations:
  (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
  (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
  (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
  (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
  (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.92. The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC")[2] to "perform light work as defined in 20 CFR 404.1567(b),[3] with the following exceptions: she is limited to two hours of walking/standing during a normal 8 hour work day with normal breaks, and she should never climb ladders/ropes/scaffolds." ([11] at 25). At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a child and family therapist. Accordingly, the ALJ found that Plaintiff was not disabled. ([11] at 29-30).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*. (citations omitted).

---

[2] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determined that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R § 404.1567(b).

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff raises four grounds for relief (as stated by the *pro se* Plaintiff):

1. The ALJ erred by failing to apply any acceptable criteria in assessing Mrs. Roberts' fibromyalgia and chronic sacroiliitis impairments, necessitating reversal and remand.

2. The ALJ failed to use the correct legal standards in determining that Mrs. Roberts' impairments or combination of impairments were not severe according to listed impairments; thus, residual functional capacities determination under SSR 96-8 is invalid.

3. The ALJ did not apply the correct legal standard in evaluating Mrs. Roberts' Residual Functional Capacity and ability to work 8 hours, per Step 5 of the Commissioner's Five Step Sequential Evaluation Process.

4. The ALJ erred in improperly evaluating and weighing the credibility of Mrs. Roberts' evidence as to her symptoms, pain, and activities of daily life pursuant to correct legal standards.

In her grounds for relief, Plaintiff argues that the ALJ erred at steps two and three of the five-step sequential analysis and erred in her assessment of Plaintiff's RFC. Plaintiff argues that the

4

ALJ failed to properly analyze Plaintiff's fibromyalgia, failed to consider Plaintiff's diagnosis of sacroiliitis, and failed to properly consider Plaintiff's symptoms and subjective complaints. As many of the arguments found in Plaintiff's stated issues overlap, the undersigned will address Plaintiff's arguments as they arise at each step of the five-step sequential analysis.[4]

*Step Two: Severe Impairment*

As previously mentioned, at step two of the sequential analysis, an ALJ determines whether the claimant has a severe impairment. An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). An impairment is not severe "if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (citations omitted). Additionally, to be considered severe, an impairment must last for or be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509; 416.909; *Gilcrease v. Astrue*, 235 Fed. App'x 201, 202 n.1 (5th Cir. 2007).

Plaintiff argues that the ALJ did not provide sufficient analysis of her fibromyalgia at step two. Plaintiff specifically argues that the ALJ did not apply SSR 12-2p in her analysis of fibromyalgia. SSR 12-2p provides guidance for determining whether a claimant's fibromyalgia qualifies as a medically determinable impairment.

Pursuant to SSR 12-2p, a claimant must show: (1) a history of widespread pain that has persisted for more than three months; (2) at least eleven positive tender points during physical

---

[4] In her grounds for relief, Plaintiff states that the ALJ failed to apply the correct legal standards at step five. The ALJ, however, did not reach step five as she terminated the analysis at step four, finding that Plaintiff was capable of performing past relevant work. Accordingly, the Court need not address step five of the sequential analysis.

examination *or* repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) evidence that other disorders that could have caused these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.

The ALJ did not mention SSR 12-2p. The ALJ, however, found that Plaintiff's fibromyalgia qualified as a medically determinable impairment and also determined that it was a severe impairment. Thus, Plaintiff was not prejudiced by the ALJ's analysis or determination regarding Plaintiff's fibromyalgia at step two. Because Plaintiff cannot show prejudice, this issue provides no basis for reversal. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (holding that procedural perfection in an ALJ's analysis is not required as long as the plaintiff's substantial rights are not affected).

Plaintiff also argues that the ALJ erred by failing to list Plaintiff's sacroiliitis[5] as a severe impairment. Plaintiff complains that the ALJ did not even mention her sacroiliitis, which was diagnosed by her neurologist, Dr. Joseph Farina. As previously explained, an impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *Stone*, 752 F.2d at 1101. Although the ALJ did not specifically mention sacroiliitis, Plaintiff admits "the ALJ referenced her history of chronic back pain." ([15] at 11). This is consistent with Plaintiff's medical records, which typically refer to Plaintiff's back issue as "back pain."

The ALJ specifically acknowledged that Plaintiff had a history of chronic back pain associated with a work-related injury sustained in 2001. The ALJ, however, noted that, other than tenderness to palpation, Plaintiff's physical exams generally revealed findings within

---

[5] Sacroiliitis is inflammation in the sacroiliac joint, which connects the sacrum with the pelvis. *See* Dorland's Illustrated Medical Dictionary 1593 (29th ed. 2000).

normal limits, such as normal range of motion, lack of edema, lack of gait problems, and lack of joint swelling. ([11] at 23 (citing [11] at 352, 360, 366, 535, 658, 667, 680 and 696)).

Plaintiff bears the burden of proving that she suffers from a severe impairment. *See Giles v. Astrue*, 433 Fed. App'x 241, 246 (5th Cir. 2011). Plaintiff has not met this burden. Plaintiff has failed to come forward with evidence demonstrating that her physical ability to do basic work activities was significantly limited by her back pain. Plaintiff has not pointed to findings from her physicians, including Dr. Farina, that she suffered from significant functional limitations resulting from her back pain. Plaintiff has not shown that her back pain or sacroiliitis is a severe impairment or that no substantial evidence supports the ALJ's decision. Moreover, even if the ALJ erred by not listing Plaintiff's sacroiliitis as a severe impairment, the error is harmless because, as discussed below, the ALJ continued to analyze Plaintiff's back pain through the latter steps of the sequential analysis.

*Step Three: Listings*

Plaintiff argues that the ALJ failed to apply any criteria in her analysis of Plaintiff's fibromyalgia and, therefore, erred in her determination that Plaintiff's fibromyalgia did not meet a listing. It is Plaintiff's burden to demonstrate that her condition satisfies the criteria in a listing, and the burden of proof to meet a listing is "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). Pursuant to SSR 12-2p:

> [Fibromyalgia] cannot meet a listing in appendix 1 because [fibromyalgia] is not a listed impairment. At step 3, therefore, we determine whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

The regulations do not require an ALJ to evaluate fibromyalgia under any particular listing. The ALJ did not specifically mention fibromyalgia in her listing analysis, but she did

7

consider Plaintiff's symptoms in light of Listings 1.04 (Disorders of the Spine) and 1.02 (Major Dysfunction of a Joint).  The ALJ considered Plaintiff's back pain as a symptom of her fibromyalgia.  The ALJ explained in other sections of her opinion that Plaintiff had been diagnosed with fibromyalgia and had complained about generalized body aches and pain, especially in the lower back. ([11] at 23, 27).  The ALJ determined that Plaintiff's symptoms did not meet the criteria of Listings 1.04 or 1.02.  As explained below, substantial evidence supports this finding.

Even if the ALJ erred in her consideration of Plaintiff's fibromyalgia at step three, this was a harmless error.  Plaintiff has not demonstrated that her substantial rights were affected by the ALJ's findings. *See Mays*, 837 at 1364.  The ALJ considered listings and Plaintiff "did not identify a specific listing that her fibromyalgia equals or articulate how her fibromyalgia satisfies the criteria of any particular listing." *Stevens v. Commissioner of Soc. Sec.*, 2017 WL 811772, at *10 (W.D. La. Jan. 3, 2017); *see also Magallanez v. Astrue*, 2008 WL 4369329, at *4 (W.D. Tex. Sept. 25, 2008).

Plaintiff also argues that the ALJ erred at step three by not acknowledging her diagnosis of sacroiliitis.  As previously explained, the ALJ considered Plaintiff's symptoms, particularly her back pain, in light of Listings 1.04 and 1.02.  Listing 1.04 requires disorders of the spine resulting in compromise of a nerve root or spinal cord with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication.  Listing 1.02 requires a major dysfunction of a joint characterized by gross anatomical deformity, chronic joint pain and stiffness, and findings of joint space narrowing, bony destruction, or ankylosis with (1) involvement of one major peripheral weight-bearing joint resulting in inability to ambulate effectively, as defined in 1.00B2b or (2) involvement of one major peripheral joint in each upper

extremity resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

> The ALJ found as follows:
>
> The claimant's history of chronic back pain does not meet the requirements of listing 1.04 (Disorders of the spine) because there is no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively.
>
> Likewise, the claimant's chronic back pain and left shoulder arthrosis, status-post rotator cuff repair, does not meet the requirements of listing 1.02 (Major dysfunction of a joint(s) due to any cause) because there is no evidence of inability to ambulate effectively, as defined in 1.00B2b, or inability to perform fine gross movements effectively, as defined in 1.00B2c.

([11] at 24).

Plaintiff cites no listing specific to sacroiliitis, and Plaintiff has not shown that the ALJ's assessment of Plaintiff's back pain using Listings 1.04 and 1.02 was inappropriate. Sacroiliitis is inflammation in the sacroiliac joint, and these listings involve disorders of the spine and dysfunction of a joint. As discussed below, the record and the ALJ's assessment of Plaintiff's RFC reveal that the ALJ's determination at step three is supported by substantial evidence.[6] Additionally, Plaintiff did not identify a specific listing that her symptoms equal or articulate how her symptoms satisfy the criteria of any particular listing. *See Falco*, 27 F.3d at 162.

*Residual Functional Capacity*

In order to make a determination at step four regarding Plaintiff's ability to perform past relevant work, the ALJ assessed Plaintiff's RFC (the most Plaintiff can still do despite her

---

[6] Although the ALJ did not provide a detailed analysis of the evidence at step three, remand is not necessary as long as analysis is contained in the decision. *See Jackson v. Asture*, 2010 WL 561754, at *3 (N.D. Miss. Feb. 10, 2010) ("Where an ALJ elsewhere provides detailed findings based upon substantial evidence that also support the finding at Step 3, there is no need to remand the case for further discussion of Step 3.")

limitations). Plaintiff argues that the ALJ erred in assessing her RFC because the ALJ failed to properly consider Plaintiff's symptoms and her subjective complaints regarding her symptoms.

When considering a claimant's RFC, an ALJ should consider whether there is a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms described by the claimant. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. An ALJ evaluates the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. An ALJ considers the record as a whole, including both objective and subjective evidence.[7]

An ALJ should consider a claimant's subjective complaints, but a claimant's own statements regarding her pain and symptoms are not determinative of disability status. 20 C.F.R. § 404.1529. "The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983).

Regarding fibromyalgia, SSR 12-2p specifically states as follows:

> We base our RFC assessment on all relevant evidence in the case record. We consider the effects of all of the person's medically determinable impairments, including impairments that are "not severe." For a person with [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have "bad days and good days."

---

[7] In addition to objective medical evidence, the ALJ should consider several other categories of evidence, including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measure other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying on his back, standing for 15 to 20 minutes every hour, or sleeping on a board); and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

SSR 12-2p. The ALJ did not mention SSR 12-2p, but as explained herein, the record demonstrates that the ALJ complied with the requirements of the rule. *See Galan v. Barnhart*, 2006 WL 2385088, at *8 (W.D. Tex Aug. 15, 2006) ("Although the ALJ did not specifically cite to Social Security Rule 96-7p or address each of its factors, he adequately considered Plaintiff's claims of subjective pain."); *see also Saulsberry v. Astrue*, 2013 WL 5349147, at *2 (N.D. Miss. Sept. 23, 2013); *Thomas v. Astrue*, 2009 WL 604883, at *7 (Mar. 4, 2009).

Plaintiff argues that her ability to perform some daily activities does not mean that she is capable of full time employment. Although it was proper for the ALJ to consider Plaintiff's daily tasks, the ALJ did not solely consider Plaintiff's daily tasks. According to the ALJ, she considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529, 416.929 and SSR 96-4p. ([11] at 25). The ALJ's opinion demonstrates that she appropriately considered the record as a whole, including Plaintiff's subjective complaints.

The ALJ noted that Dr. Farina, a treating neurologist "diagnosed fibromyalgia with diffuse trigger point tenderness, and treatment records document related complaints of malaise/fatigue and generalized total body aches and pain, worse in the lower back." ([11] at 23, 27). The ALJ noted that Plaintiff alleged that she could no longer engage in the activities she once enjoyed and was unable to complete simple daily tasks because her pain made it difficult to sit, stand, walk, or move. ([11] at 26).

The ALJ, however, found that Plaintiff's statement concerning the intensity, persistence, and limiting effect of her symptoms were not entirely consistent with the evidence of record. ([11] at 27). The ALJ noted that no treating or examining physician assigned her limitations

11

concerning standing, walking, or sitting.  The ALJ also noted that, other than tenderness to palpation, Plaintiff's physical exams generally revealed findings within normal limits, such as normal range of motion, lack of edema, lack of gait problems, and lack of joint swelling. ([11] at 23, 27 (citing [11] at 352, 360, 366, 535, 658, 667, 680 and 696)).

The ALJ noted that physicians prescribed medication for Plaintiff's pain, which reportedly relieved her pain.  Plaintiff also reported improvement with the use of heating pads. ([11] at 29).  The ALJ noted that on April 22, 2013, approximately six weeks after performing surgery on Plaintiff to treat her carpal tunnel syndrome, a treating physician found that Plaintiff had reached maximum medical improvement and released her "back to work to full duty activities with no restrictions." ([11] at 27, 528).

The ALJ also considered the opinions of the non-treating Disability Determination Services ("DDS") medical consultants.  These doctors determined that Plaintiff could perform a limited range of light work, with standing or walking limited to two hours in a work day and with the restriction of never climbing ladders, ropes, or scaffolds. ([11] at 29, 173-86).

The ALJ pointed out that Plaintiff engaged in relatively normal activities of daily living, including driving, performing household chores, grocery shopping, cooking, and attending church.  Plaintiff also cared for her grandchildren, which included preparing their meals, assisting with homework, and taking them to piano lessons.  Plaintiff walks three to four times a week and joined the YMCA. ([11] at 28, 656, 717).  Plaintiff states that her hobbies include sewing, quilting, making children's clothing, and playing the piano. ([15] at 3).

Plaintiff has the burden of showing functional impairment that limit her ability to perform substantial gainful activity. *Mames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).  Plaintiff has not meet that burden.  The mere diagnosis of an impairment does not establish a claimant's

disability. *Bordelon v. Astrue*, 281 Fed. App'x 418 421 (5th Cir. 2008). The ALJ found that that the evidence of record (including assessments from DDS consultants, Plaintiff's daily activities, and a lack of an assessment from a treating physician assigning Plaintiff limitations which would prevent her from performing work activities) was more persuasive than Plaintiff's subjective complaints, a determination within the purview of the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) ("Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence."). Considering the record as a whole, the ALJ's decision is supported by substantial evidence.

After assessing Plaintiff's RFC, the ALJ considered the issue presented at step four of the sequential analysis—whether Plaintiff's impairments prevent her from doing past relevant work. The ALJ determined that Plaintiff was capable of performing her past relevant work as a child and family therapist, which the ALJ noted is a sedentary, skilled occupation. Accordingly, the ALJ found that Plaintiff was not disabled. This decision is supported by substantial evidence.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and that no reversible error of law was committed by the ALJ. Accordingly, the undersigned recommends that:

1. Defendant's Motion to Affirm [17] be GRANTED,
2. The Commissioner's final decision be AFFIRMED, and
3. This action be DISMISSED.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing

party.  The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 5th day of November, 2018.

s/ Michael T. Parker<br>United States Magistrate Judge